**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **I.W., E.W., and M.W.-1**

**No. 21-0018** (Randolph County 19-JA-109, 19-JA-110, and 19-JA-111)

**MEMORANDUM DECISION**

Petitioner Father M.W.-2, by counsel Steven B. Nanners, appeals the Circuit Court of Randolph County's January 6, 2021, order denying his request for an improvement period and terminating his parental rights to I.W., E.W., and M.W.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his request for an improvement period and terminating his parental rights without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2019, the DHHR filed an abuse and neglect petition against petitioner and the mother alleging exposure of the children to drug use. Specifically, the DHHR alleged that I.W.—then just twelve years old—admitted to using methamphetamine with a friend of the mother. According to the petition, the mother claimed she had just learned that I.W. had used methamphetamine. However, the DHHR alleged that the mother knew that the child had used methamphetamine a month prior as he reported dropping a glass pipe and the mother cleaned up

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one of the children and petitioner share the same initials, we will refer to them as M.W.-1 and M.W.-2, respectively, throughout the memorandum decision.

the broken glass. According to the petition, the mother continued to allow the friend who used methamphetamine with I.W. in her home and around the children. The DHHR also alleged that a Child Protective Services ("CPS") worker visited the parents' home and found that the mother had allowed other known drug users to visit the home. According to the petition, the mother was also in and out of incarceration and tested positive for methamphetamine in July and August of 2019. According to the petition, I.W. and E.W. were also routinely missing from or tardy to school. Finally, regarding petitioner, the DHHR alleged that he was incarcerated upon convictions for grand larceny, forging and uttering, and obtaining property in return for worthless checks. The DHHR alleged that he failed to provide the children food, clothing, shelter, or supervision. The circuit court held a preliminary hearing where it granted the DHHR legal and physical custody of the children.

The DHHR filed an amended petition in November of 2019 alleging additional abuse and neglect of the children by the mother and petitioner. The DHHR alleged that E.W. disclosed that he was a victim of sexual abuse by a friend of the mother. Specifically, E.W. disclosed that he was asleep and awoke to find the mother's friend examining his genitals. According to the amended petition, the CPS worker addressed this allegation with the mother, who denied knowledge of such abuse. The DHHR also alleged that I.W. disclosed that petitioner and the mother engaged in domestic violence. Specifically, I.W. disclosed that he witnessed petitioner strike the mother, which scared the child. I.W. also told the CPS worker that he would occasionally intervene to help the mother, but that he was scared of petitioner. The CPS worker interviewed the mother who claimed that petitioner would commit infidelity and then come home and want to fight with her. The mother also told the CPS worker that petitioner would leave her for stretches of time to use drugs with his friends. The DHHR further alleged that other family members witnessed bruising on the mother's face and that one family member told the CPS worker that petitioner would "beat on [the] mother [] when he did [not] get his way."

The circuit court held an adjudicatory hearing in January of 2020 wherein petitioner stipulated to abusing and neglecting the children and failing to protect the children from abusive and neglectful situations during his period of incarceration. Petitioner testified that he had been incarcerated for the prior twenty months and was still incarcerated at the time of the hearing. The circuit court scheduled a dispositional hearing for February of 2020.

The next month, petitioner filed a motion for a post-adjudicatory improvement period while the DHHR moved for petitioner's parental rights to be terminated. In support of its motion, the DHHR argued that petitioner remained incarcerated and unable to participate in an improvement period. The circuit court continued the scheduled dispositional hearing until March of 2020 to consolidate the matter for purposes of disposition with the mother, who requested new counsel be appointed to her. The circuit court also continued the matter because petitioner advised the court that he was participating in a work release program and was scheduled to appear before the parole board for possible release, which would allow him to participate in an improvement period. The circuit court continued the scheduled March hearing due to the COVID-19 pandemic and the resulting judicial emergency. The circuit court granted a final continuance in September of 2020 due to the mother's medical emergency.

In October of 2020, the circuit court held a hearing where it heard petitioner's motion for an improvement period. Petitioner testified that he was previously incarcerated for felony convictions related to writing bad checks and that he was now free from incarceration, employed, and passing drug screens. Petitioner further stated that he had completed classwork during his incarceration and would comply with terms and conditions of an improvement period. However, on cross-examination, petitioner denied reports that he committed domestic violence against the mother or in front of the children. Specifically, petitioner testified "well, there was no violence. I do [not] know where [I.W.] is getting that from." Next, the mother's aunt testified that she witnessed marks of abuse on the mother. The aunt testified that she warned the mother for years about the domestic violence and feared that petitioner could kill the mother. The aunt also testified that I.W. told her he witnessed petitioner physically abuse the mother. The aunt testified that the child expressed fear of living at home and that the domestic violence worried him, and that he tried to protect his mother. Additionally, the mother testified that there was domestic violence in the home at least "at a few points in time" and, conversely, that petitioner caused her physical injuries on multiple occasions. The mother also acknowledged that some of the violence took place in view of the children. The mother testified that I.W. once exclaimed, "mom and dad please stop" during the abuse.

In light of the evidence, the circuit court denied petitioner's motion for an improvement period, finding that petitioner "ha[d] not met the standard that the law requires in terms of an improvement period because the allegations and the proof is the existence of domestic violence, which he denies." The circuit court further found that it could not award petitioner an improvement period because "to improve means to recognize deficiencies. [Petitioner] does not recognize [the] deficiency" and his failure to accept responsibility for the domestic violence would make an improvement period an exercise in futility.

The circuit court held a final dispositional hearing in December of 2020 wherein the mother voluntarily relinquished her parental rights. The circuit court also affirmed its decision to deny petitioner's motion for an improvement period because he continued to deny perpetrating domestic violence upon the mother. The circuit court reasoned that petitioner's denials left the court with few options. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights. The circuit court's January 6, 2021, dispositional order reflected this termination.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing

---

[2]The mother voluntarily relinquished her parental rights. The permanency plan for M.W. and E.W is adoption by their aunt. The permanency plan for I.W. is also adoption by an aunt.

court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying his motion for a post-adjudicatory improvement period because he had established by clear and convincing evidence that he was likely to fully participate in an improvement period and acknowledged the abuse and neglect in his home. Specifically, petitioner argues that he stipulated to failing to protect the children from the mother while he was incarcerated. Petitioner argues that this stipulation was a sufficient acceptance of responsibility to remedy the abuse and neglect in the home. Petitioner continues to deny any domestic violence in the home. In light of these claims, he argues that the circuit court erred in failing to grant him a post-adjudicatory improvement period. We disagree.

This Court has held that "a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period." *In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000). West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the . . . parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

In support of his argument, petitioner cites to *In re S.J., A.J.-1, and A.J.-2*, No. 18-0243, 2018 WL 6119793 (W. Va. Nov. 21, 2018)(memorandum decision); however, this case does not support petitioner's claim that the circuit court erred in failing to grant him a post-adjudicatory improvement period. In *In re S.J.*, a circuit court found that a mother failed to accept responsibility for abusing and neglecting her children and denied her motion for an improvement period. *Id.* at *2. However, the record in those proceedings did not support the circuit court's findings. Rather, in *In re S.J.*, the DHHR worker who testified during the proceedings admitted she was unprepared

to testify, did not prepare the mother's case plans, and had not even read the circuit court's adjudicatory order. *Id*. at \*2. There are no such extenuating factors in these proceedings. This Court also found that the record in those proceedings demonstrated that the mother accepted full responsibility for her abuse and neglect. *Id*. at \*4. Here, the record clearly demonstrates that petitioner refuses to accept full responsibility for his abuse and neglect of the children by repeatedly denying committing any domestic violence despite the circuit court's findings in support of the same. Therefore, the facts underlying the *In re S.J.* decision are wholly distinguishable from the facts of the case at bar.

Contrary to petitioner's argument, we see no error in the circuit court's determination that petitioner was not likely to fully participate in an improvement period. As noted above, the circuit court found that petitioner failed to acknowledge or take any responsibility for the domestic violence he perpetrated in the home that led to the abuse and neglect of the children. Specifically, petitioner continues to deny committing domestic violence against the mother or in the presence of the children, despite ample testimony and evidence to the contrary, and the circuit court's findings in support of the same. Petitioner argues that there was no testimony that law enforcement was ever contacted or sent to petitioner's home alleging domestic violence. However, this Court has held that while the DHHR is required to prove conditions of abuse and neglect by clear and convincing evidence, there is "not . . . any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden. Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981)." Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further, several witnesses, including the mother and her aunt, testified that petitioner committed domestic violence against the mother in the home in the presence of the children. Although petitioner questions their credibility, this Court has long held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997).

While petitioner further argues that he proved he was likely to participate in an improvement period by stipulating to other abuse and neglect of the children, participating in parenting classes while incarcerated, obtaining employment upon release from incarceration, and passing drug screens, these actions alone could not have been successful without petitioner's recognition of his domestic violence as abuse and neglect of the children. Given this evidence, we find no error in the circuit court's decision to deny petitioner a post-adjudicatory improvement period.

Finally, to the extent that petitioner argues a less-restrictive alternative to the termination of his parental rights should have been employed, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be

5

substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given petitioner's failure to address the conditions of abuse, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and/or neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare. Accordingly, we find no error in the circuit court's termination of his parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 6, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: June 22, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton